O

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **AUSSIE PET MOBILE, INC.,** ) | CASE NO. SACV 09-1407 AG (RNBx) |
| ) | |
| **Plaintiff,** ) | |
| ) | **ORDER GRANTING IN PART AND** |
| v. ) | **DENYING IN PART DEFENDANTS'** |
| ) | **MOTION TO DISMISS** |
| **DANIEL L. BENTON, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

This case involves a contract dispute between Plaintiff Aussie Pet Mobile, Inc. ("Plaintiff") and Defendants Daniel L. Benton ("Mr. Benton"), Tammy Benton ("Ms. Benton"), and Excelsior Enterprises, Inc. ("Excelsior") (collectively "Defendants"). Defendants filed a Motion to Dismiss ("Motion"). All Defendants move for dismissal of Plaintiff's third claim under Federal Rule of Civil Procedure 12(b)(6). In addition, Ms. Benton moves to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. After considering the papers and arguments submitted, the Motion is GRANTED in part DENIED in part.

**BACKGROUND**

The following facts are taken from the Complaint and admissible evidence.

Defendant Excelsior is a corporation set up by Mr. Benton. (Compl. ¶ 7.) Ms. Benton

1  resides in Ohio and is the daughter and former employee of Mr. Benton.  In 2008, Mr. Benton,
2  the franchiseee, executed a franchise agreement ("Franchise Agreement") with Plaintiff, a
3  franchisor, to operate an mobile pet grooming business in Northeast Cincinnati, Ohio.  (Compl.
4  ¶¶ 25-27.)

5      The outcome of Defendants' 12(b)(6) motion turns on whether the Court will enforce a
6  noncompetition clause.  The Franchise Agreement contains two terms at issue here.  Section 17.1
7  is titled "Exclusive Relationship, Restrictions on Similar Businesses During Terms and After
8  Transfer, Termination, Expiration, Repurchase, etc." ("the Exclusive Relationship Clause") and
9  states:

> During the Term of the Agreement and any successor franchise, and for three (3) years after any transfer, termination, expiration or repurchase of this Agreement, the termination of your rights, and/or the date on which you cease to operate your Aussie Pet Mobile Franchise Business, whichever is later, neither you, any Affiliate of yours, nor any shareholder, member or partner of yours (in the event you are or become a business entity), nor any member of the immediate family of you or any of the foregoing, will: (a) have any direct or indirect interest as a disclosed or beneficial owner in any Similar Business located <u>anywhere</u>; (b) have any direct or indirect interest as a disclosed or beneficial owner in any entity which is awarding franchises or licenses or establishing joint ventures or licenses or establishing joint ventures or other business enterprises for the operation of Similar Businesses located <u>anywhere</u>; (c) perform services for any Similar Business located <u>anywhere</u>; or (d) directly or indirectly employ, or seek to employ, any person who is employed by us, any of the Franchisor Related Persons/Entities or by any other Aussie Pet Mobile franchisee, without the prior written consent of us and that person's employer. In any case, you will first notify us and the employer before taking any action with respect to any such employment or offer of employment.

21  (Complaint, Exhibit "A", § 17.1 (emphasis in original).)
22      The interpretation of the Exclusive Relationship Clause partially depends on what state's
23  law applies.  Section 24.2 of the Franchise Agreement is titled "Choice of Laws" (the "Choice of
24  Law Clause") and states:

> You and we agree on the practical business importance of certainty as to the law applicable to your and our relationship and its possible effect on the development and competitive position of the System. Therefore, you and we also agree that, except with respect to the applicability of the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. and the effect of federal pre-emption of state law by such Act, and except to the extent governed by the United States Trademark Act and other

>federal laws and as otherwise expressly provided in this Agreement, this Agreement and all other matters, including, but not limited to respective rights and obligations, concerning you and us, will be governed by, and construed and enforced in accordance with, the laws of the state where the largest geographic portion of your Protected Area is located [i.e. Ohio]. You and we agree that this provision shall be enforced without regard to the laws of such state relating to conflicts or laws or choice of law; except that the provisions of any law of that state regarding franchises (including, without limitation, registration, disclosure, and/or relationship laws) shall not apply unless such state's jurisdictional, definitional and other requirements are met independently of, and without reference to this Section.

(*Id.*, § 24.2.)

Ms. Benton's 12(b)(2) Motion turns on whether she had sufficient contacts with California for this Court to exercise personal jurisdiction. After Mr. Benton signed the Franchise Agreement, he and Ms. Benton attended Plaintiff's five day franchisee business training class in California. (Compl. ¶ 28; Arevalo Decl. ¶ 4.) At the training, Plaintiff trains franchisees on its confidential marketing, operating and sales systems. (Arevalo Decl. ¶ 5.) Plaintiff has developed these systems and procedures through significant research and expenditure of resources, and treats them as company confidential information. (Compl. ¶¶ 23-24; Arevalo Decl. ¶ 6.) Plaintiff takes precautions to prevent disclosure of these systems to anyone outside the company, including providing access only to franchisees and employees who agree to in writing to maintain the confidentiality of the systems and procedures. (Compl. ¶ 24; Arevalo Decl. ¶ 7.)

Plaintiff alleges that Defendants breached the Franchise Agreement by closing their franchise down without Plaintiff's authorization. (Compl. ¶¶ 29-31.) Plaintiff further alleges that Ms. Benton breached the agreement by operating a competing mobile pet grooming business. (Compl. ¶ 32.)

Based on these facts and others, Plaintiff asserts three claims, numbered as follows: (1) declaratory relief, against Mr. Benton and Excelsior; (2) injunctive relief against Mr. Benton and Excelsior; and (3) injunctive relief against all Defendants. Defendants now all move for dismissal of the third claim. Ms. Benton also moves to dismiss for lack of personal jurisdiction.

**ANALYSIS**

## 1. PERSONAL JURISDICTION OVER MS. BENTON

### 1.1 Legal Standard

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may bring a motion to dismiss for lack of personal jurisdiction. Although the defendant is the moving party, the plaintiff bears the burden of making a prima facie showing of facts establishing personal jurisdiction by a preponderance of the evidence. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). When a court decides the motion before conducting a trial or evidentiary hearing, the plaintiff need only make a *prima facie* showing that personal jurisdiction exists. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). A plaintiff makes a *prima facie* showing if the plaintiff produces admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). For a 12(b)(2) motion brought before trial or an evidentiary hearing, a court accepts as true the complaint's uncontroverted factual allegations and resolves any factual conflicts in the plaintiff's favor. *Id.* Otherwise, defendants could prevent plaintiffs from meeting their burden simply by contradicting plaintiffs' affidavits. *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Lawful exercise of jurisdiction over a nonresident defendant must comport with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. Concerns for fairness require that a court exercise jurisdiction only if the defendant's actions in the forum are such that "he should reasonably anticipate being haled into court there." *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

A plaintiff can establish a defendant's minimum contacts with a given forum under a

theory of general or specific jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). General jurisdiction exists where a defendant has "substantial" or "continuous and systematic" contacts with the forum state. *Id.* at 415. If general jurisdiction exists, the forum state has jurisdiction over the defendant regardless of where the events giving rise to the litigation occurred. *Id.* at 415.

If a defendant's contacts with the forum state are not sufficient to establish general jurisdiction, specific jurisdiction may still be shown. Specific jurisdiction exists where defendants have purposefully availed themselves of "the benefits and protections" of the laws of the forum through specific acts giving rise to the litigation at hand. *See Burger King Corp.*, 471 U.S. at 472-73 (citing *Helicopteros*, 466 U.S. at 414). Once it is established that defendants purposefully availed themselves of the benefits and protections of the forum, or purposefully directed their actions toward the forum, the forum's exercise of jurisdiction is "presumptively reasonable." *Roth v. Garcia Marquez*, 942 F.2d 617, 625 (9th Cir. 1991).

It is clear that general jurisdiction does not apply here, so the Court now turns to specific jurisdiction.

**1.2     Specific Jurisdiction**

Specific jurisdiction is determined by a three part test. First, plaintiffs must show that the defendant "purposefully direct[ed] . . . activities or consummate[d] some transaction with the forum or resident thereof; or perform[ed] some act by which [the defendant] purposefully avail[ed] himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Reebok Intern. Ltd. v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir. 1995) (citing *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1485 (9th Cir.1993)). Second, plaintiffs must show that the claim "arises out of or relates to the defendant's forum-related activities." *Id.* Finally, the exercise of jurisdiction must "comport with fair play and substantial justice, i.e. it must be reasonable." *Id.* If plaintiffs show the first two elements by a preponderance of the evidence, then reasonableness is presumed and the

burden shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *see also Roth*, 942 F.2d at 625.

Here, the Court finds that it can exercise specific jurisdiction over Ms. Benton. First, Ms. Benton "consummate[d] some transaction with the forum or resident thereof" when she traveled to California and spent a week being trained by Plaintiff. *Reebok*, 49 F.3d at 1391; Arevalo Decl. ¶ 4.

Second, Plaintiff's claims against Ms. Benton "arise[] out of or relate[] to" Ms. Benton's California training. *Reebok*, 49 F.3d at 1391. Specifically, Plaintiff asserts that Ms. Benton attended five days of training in California on Plaintiff's "confidential marketing, operating and sales systems," and that Plaintiff requires everyone who receives training to agree "in writing to maintain the confidentiality" of these systems. (Arevalo Decl. ¶¶ 4-7.) Plaintiff's only claim against Ms. Benton is for injunctive relief. (Compl. ¶¶ 47-50.) This claim is based in part on allegations that Ms. Benton is using the trade secrets that she learned in the training. (*See, e.g.*, Compl. ¶ 32; Arevalo Decl. ¶¶ 4-10.)

Thus, Plaintiff has met the first two requirements for specific jurisdiction by a preponderance of evidence, and the burden now shifts to Ms. Benton to present a compelling case that the exercise of jurisdiction would not be reasonable here. *Schwarzenegger*, 374 F.3d at 802. Ms. Benton has not done so. Defendants assert in their moving papers that "[i]t would be cost prohibitive for [Ms. Benton] to mount a defense in California, pay for an attorney in California and attend deposition and trial in California," and that "[i]t would be likewise expensive to fly out percipient witnesses who can testify to the facts surrounding [Ms. Benton's] conduct." (Br. 18:23-26.) But notably absent from Defendants' papers, including the two declarations of Ms. Benton, is any evidence to support these statements. The Court also notes that Ms. Benton shares an attorney with Mr. Benton and Excelsior, so it does not appear on the facts before this Court that Ms. Benton is unable to obtain representation in California. Further, while many witnesses may be in Ohio, those same witnesses would likely need to appear here because Mr. Benton and Excelsior contractually agreed to this Court's exercise of jurisdiction.

Further, many other witnesses are located in California. Ms. Benton has not met her burden of overcoming the reasonableness presumption.

Because all three elements are met, the Court may exercise specific jurisdiction over Ms. Benton.

### 1.3     Conclusion

Because the Court finds that it can exercise specific personal jurisdiction over Ms. Benton, the Motion is DENIED as to lack of personal jurisdiction.

The Court notes that Plaintiff also argues that personal jurisdiction over Ms. Benton exists under a forum selection clause. Because the Court finds that the claims against Ms. Benton arise out of her contacts with California, the Court need not determine whether the forum selection clause applies to Ms. Benton, a non-signatory to the franchise agreement.

## 2.     FAILURE TO STATE A CLAIM

### 2.1     Legal Standard

A court should dismiss a complaint when its allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations' are not required." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (May 18, 2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 555 (2007)). The Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993).

But the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A

claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1940 (citing *Twombly*, 550 U.S. at 556). A court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," *Iqbal*, 129 S. Ct. at 1940, or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

**2.2    Application**

Defendants move to dismiss Plaintiff's third claim under Rule 12(b)(6). Plaintiff's third claim is for injunctive relief, and is brought against all Defendants. In this claim, Plaintiff seeks to enforce the Exclusive Relationship Clause. Defendants argue that the Exclusive Relationship Clause is an unreasonable restraint on competition, and that the claim should therefore be dismissed. The Court agrees.

To determine whether the Exclusive Relationship Clause is enforceable, the Court must first determine what forum's laws apply. "[F]ederal courts sitting in diversity apply the forum state's choice of law rules to determine the controlling substantive law." *Legacy v. Legacy Health Sys.,* 413 F.3d 943, 950 (9th Cir. 2005) (quoting *Patton v. Cox,* 276 F.3d 493, 496 (9th Cir. 2002)). Plaintiff filed its Complaint in federal court in California under diversity jurisdiction. (Compl. ¶ 11.) So, the Court uses California choice of law analysis. The Court first examines the validity of the Choice of Law Clause.

2.2.1    The Choice of Law Clause

"In determining the enforceability of arm's-length contractual choice-of law provisions, California courts shall apply the principles set forth in Restatement section 187, which reflects a strong policy favoring enforcement of such provisions." *Nedlloyd Lines B.V. v. Superior Court,* 3 Cal. 4th 459, 464-465 (1992). Under Restatement section 187,

> the law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Id.* at 465. Here, the Choice of Law Clause provides that "this Agreement and all other matters . . . will be governed by, and construed and enforced in accordance with, the laws of the state where the largest geographic portion of your Protected Area is located." (Arevalo Decl., Exh. 1-2, § 24.2.) The parties agree that the "largest geographic portion" of Defendants' protected area is Ohio. Applying the Restatement test, the Court finds that the "chosen state," Ohio, has a "substantial relationship to the parties" because the Defendants operated their franchise in Ohio.

Whether application of Ohio law "would be contrary to a fundamental California policy" depends on the applicable Ohio and California laws. If the relevant Ohio and California laws do not conflict, then application of Ohio law is not "contrary to a fundamental California policy," and Ohio law will govern. *See Hurtado v. Superior Court*, 11 Cal. 3d 574, 580 (1974) (internal citation omitted) ("There is obviously no [choice of law] problem where the laws of the two states are identical."). Thus, the Court must scrutinize the application of Ohio and California laws to the Exclusive Relationship Clause, and determine whether those laws conflict. Here, the

9

Court finds that the Exclusive Relationship Clause would not be enforceable under either Ohio or California law, so the laws do not conflict, and the Court will apply Ohio law.

### 2.2.2 California Law

In California, Business and Professions Code § 16600 governs noncompetiton clauses. Section 16600 states that "any contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600. Typically, noncompetition clauses in California, whether reasonable or unreasonable, are void under § 16600. *See Scott v. Snelling and Snelling, Inc.,* 732 F. Supp. 1034, 1042 (N.D. Cal. 1990) ("California does not follow a 'rule of reason' to be applied in the interpretation of covenants restraining competition under section 16600."). But California Courts have created an exception to Section 16600 when a noncompetition clause is intended to protect a franchisor's trade secrets. *See Muggill v. Reuben H. Donnelley Corp.*, 62 Cal. 2d 239, 242 (1965) (contracts restricting an employee from competing with his or her former employer after termination are unenforceable "unless they are necessary to protect the employer's trade secrets"). Thus, "agreements designed to protect an employer's proprietary information do not violate Section 16600." *Fowler v. Varian Associates, Inc.*, 196 Cal. App. 3d 34, 44 (1987).

Plaintiff argues that the Exclusive Relationship Clause is merely a protection of its trade secrets, while Defendants argue that the clause "goes far beyond such restrictions and stretches to any conceivable form of competitive action." (Reply 4:22-24.) The Court agrees with Defendants. Rather than limiting the language to protection of trade secrets, the Exclusive Relationship Clause prohibits the signatory, any affiliate, "any shareholder, member or partner," and "any member of the immediate family" from having "any direct or indirect interest as a disclosed or beneficial owner in any Similar Business located <u>anywhere</u>." (Arevalo Decl., Exh. 1-2, § 17.1 (emphasis in original).) The Exclusive Relationship Clause further prohibits Defendants and affiliates from "performing services for any Similar Business located <u>anywhere</u>." (Arevalo Decl., Exh. 1-2, § 17.1 (emphasis in original).) The broad language and

lack of restrictions on the scope of the Exclusive Relationship Clause show that the intent was not merely to protect trade secrets, but also to restrict competition. *See Applied Latona v. Aetna U.S. Healthcare, Inc.*, 82 F. Supp. 2d 1089, 1095 (C.D. Cal. 1999) (applying California law, invalidating non-solicitation clause that was "neither narrowly tailored nor limited to protecting trade secrets"). Accordingly, the Exclusive Relationship Clause would not be enforced under California law.

        2.2.2   Ohio Law

The Court reaches the same result under Ohio law, where the "Rule of Reason" applies to restraints on trade. *Schweizer v. Riverside Methodist Hosps.*, N.E.2d 313, 314 (Ohio Ct. App. 1996) (citing *List v. Burley Tobacco Grower's Co-operative Assoc.*, 151 N.E. 471 (Ohio 1921)); *C.K. & J.K. Inc. v. Fairview Shopping Ctr. Corp.*, 407 N.E.2d 507, 509 (Ohio 1980). Under the "Rule of Reason," restraints on trade are enforceable to the extent that they are reasonable. *Id.* A covenant restraining competition "is reasonable if the restraint is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public" *Rogers v. Runfola & Associates, Inc.*, 565 N.E. 2d 540, 543 (Ohio 1991) (citations omitted).

As noted, the Exclusive Relationship Clause in the Franchise Agreement restrains trade by precluding Defendants and anyone affiliated with Defendants' franchise from providing any similar services, anywhere. (Arevalo Decl., Exh. 1-2, § 17.1.) The Court finds that the breadth of the Exclusive Relationship Clause is unreasonable under Ohio law. For example, as Defendants point out, "[t]he clause would prevent family members . . . from owning stock in Petco, buying a pet store in India, . . . or owning a stock trust in a public company in Australia that performs services similar to Plaintiff." (Motion 4:15-21.) This overbroad restriction is "greater that required" for the protection of Plaintiff. *Rogers*, 565 N.E. 2d at 543. Thus, the Exclusive Relationship Clause would be invalid under Ohio law as well.

11

### 2.2.3 Conclusion

Ohio law and California law do not conflict here because the Exclusive Relationship Clause would be invalid under both California and Ohio law. So, under the California choice of law analysis, the Court applies Ohio substantive law, and finds that the Exclusive Relationship Clause is invalid.

Accordingly, the Motion is GRANTED as to Plaintiff's third claim for relief. But the Court grants with leave to amend. Specifically, the Court finds that Plaintiff may be able to narrow its third claim so that the Exclusive Relationship Clause would apply only to Plaintiff's "legitimate interests." *Rogers*, 565 N.E. at 543 ("A covenant not to compete which imposes unreasonable restrictions upon an employee *will be enforced to the extent necessary to protect an employer's legitimate interests.*" (emphasis in original) (citations omitted)).

## DISPOSITION

Defendants' Motion is DENIED as to personal jurisdiction. The Motion is GRANTED with leave to amend as to Plaintiff's third claim for relief. Plaintiff may file an amended complaint by July 19, 2010.

IT IS SO ORDERED.

DATED: June 28, 2010

_____
Andrew J. Guilford
United States District Judge